This is 4090958, Illinois Farmers Insurance Company v. Kim Hoskins. We have for the appellant, William Graham Jr. and David Moore. Have you split your time? We have. And you've so advised the bailiff? We have. Alright. And for the appellate, Danny Worker. Please proceed. Good morning, Your Honors. May it please the Court, my name is William Graham, appearing on behalf of Jesse Smith. I understand that the Court has fully read and digested the brief, so I won't reiterate the facts. However, if the Court has any questions, I'd be glad to clarify. Moving on to the argument, in this case, the interpretation of an insurance policy is a question of law. All terms must be given in plain and ordinary meaning and all exclusions must be interpreted in favor of coverage. These are well-established principles of law. In this case, the insurance policy in question created insurance coverage for the insured on an insured location. The policy contained a motor vehicle exclusion, but that motor vehicle exclusion did not exclude coverage where the vehicle was not subject to motor vehicle registration or where it was used on an insured location. An insured location was defined under the policy as that part of a premises occasionally rented to any insured for non-business purposes. Did you find any cases on that issue of whether this was a rental? Well, I did look into what the term rental was. Rental, in terms of Webster's Dictionary, includes the concept of a purchase of a temporary right without a lease. Also, under Black's Law Dictionary, it's defined as consideration paid for occupation or use of property. There is one case that I thought was particularly useful, McNeil v. Chicago Park District. In that case, the Illinois Supreme Court agreed that a payment for use of public property, in that case a harbor, was in the nature of a rental. Each of these support the fact that rental is, in the plain and ordinary meaning of the word, encompasses the concept of payment in exchange for use. In the trial court, the court was concerned about an expansive use of that phrase and was concerned about the intent of the drafter. I would submit to this court, however, that that was not the proper inquiry. The only inquiry that the court should have applied was what is the plain and ordinary usage of the term rental. As the legal references and authorities show, the concept of rental is clearly more expansive than just a lease. It includes the concept of payment for exchange for use. Furthermore, to the extent that the term rent within the policy was ambiguous in any way, the court was under an obligation to interpret that ambiguity in favor of the insured. It seems that, anticipating counsel's argument, there is no opportunity for this interpretation of the motor vehicle exclusion to increase in any dramatic way the coverage offered to policyholders. Because the circumstances under which it could be applied, i.e. the use of a motor vehicle on recreational land, is such a limited circumstance that it is unlikely to increase the scope of coverage at all. Moving on, although the lower court did not rule on the resident exclusion, it was argued in the lower court, and the lower court did express that it perhaps could apply. I think the lower court is mistaken in that interpretation. In this case, the injured party, Jesse Schmidt, was a minor and was under the custody of Ronald Schmidt, not Kim Hoskins or even his mother Carmen at the time, and did not live within that residence that was insured. It's true that he may have spent up to four nights a month in that residence, but that did not create residency because he had no intention of staying or continuing to reside permanently within that dwelling. I believe that the case that… What is the evidence specifically as to how often this child was at that residence? I think the testimony offered that he stayed every other weekend, which would approximately be four nights per month. Counsel raises the case of Horacio. Did he receive mail at the house? No. I don't believe so, Your Honor. Do minors receive mail anymore? Is it all by text and computer? Very true, Your Honor. Did he have a computer at the house? Was there any evidence about that? No. I think the only evidence is that they had a bed for him if he needed it. Not a bedroom? I don't recall the actual text of the deposition, but that's my recollection. He had a place to stay, but that his residence and where he had his bedroom was in the residence of Ronald Schmidt. Just getting back to the case that counsel raised, it's a Hutchcraft case. I don't think that it is instructive or binding on this case because in that case, the court was looking at a residency exclusion and seeking to establish coverage. In this case, it's the opposite situation where it's true that he occasionally stayed in the Hoskins residence. There is no reason to extend that visitation into residency because it would not create coverage in this case. If the court has any questions, I'd be happy to entertain them. Otherwise, I'll move this case to counsel. Well, the policy defines an insured as including a relative of a named insured or anyone under the age of 21 who is also a permanent resident of the household. But then the exclusion only says it excludes coverage for bodily injury to any resident. Right, Your Honor. And it clearly was not a resident. He did not permanently reside in that home. So you're saying we should engraft permanent resident onto that exclusion because the insurance company wanted to exclude insureds from coverage here? Yes. Does that make sense? I'm sorry, Your Honor? Does that make sense? I'm not sure if I understood your question. The fact that he didn't live in the home, I think, is the really key fact here. He occasionally visited. That is true. That is established. But there was no custodial relationship in that home. And he had a permanent residence elsewhere. There's no reason to say that he had two residences because it's not true. And that was the holding in the Hutchcraft case, that he had two residences. I don't think that's true here. But that was for purposes of finding coverage, correct? Exactly. Okay, thank you. Mr. Moore? Thank you. I'm with the District Court of Counsel. My name is David Moore. I represent Attendant Kim Hoskins in this matter. The trial court and the parties in this matter have focused on the issue of whether or not there's coverage. Well, that's really not the issue for this court. The issue for this court is there's two subparts of the issue of coverage. One is the duty to defend. The other is the duty to indemnify. As there has not been a finding of liability in the underlying action, the duty to indemnify is not right for this court's determination. Really, all we're looking at is the duty to defend. And the duty to defend is much broader than the duty to indemnify. When you're looking at a duty to defend, you look at the allegations of the complaint, you compare those with the terms of the policy, and then you make a determination as to whether or not the allegations of negligence are potentially within coverage of the policy. And I think pretty clearly they are. I want to focus my argument on whether or not the motor vehicle exclusion that the trial court relied upon is clear and free from doubt, which is what is required in order for the trial court to make the determination that the duty to defend does not apply in this case. Now, the exclusion relied upon by the trial court was there's no duty to defend if the allegations of negligence arise from the ownership, maintenance, use, loading, or unloading of a motor vehicle. Pretty clearly, Mr. Hoskins did not own the vehicle, did not maintain the vehicle, was not using the vehicle, was not loading or unloading the vehicle. As such, I believe that that term, motor vehicle exclusion, is not clear and free from doubt as is required. Since that term is ambiguous, this court should construe the policy to provide defense coverage for the Hoskins in this matter. And we would ask that this court reverse the trial court's grant of summary judgment to the farmers in this matter, reverse the matter. Thank you. Well, counsel, before maybe let me ask you, what does that language mean? I believe that whenever you're construing an insurance policy, you need to take a look at what was expected from the standpoint of insurance. If Mr. Hoskins, if it was his ATV, if he was using and if he caused injury to his stepson, I would agree that there should be no duty to defend by farmers. In this case, the allegations in the underlying complaint, I wouldn't say Mr. Hoskins is an innocent bystander, but the allegation is he failed to supervise his stepson and his stepson's operation of that ATV. That is what farmers, I believe, was intending to exclude from coverage. Mr. Hoskins' active participation in the use, loading, unloading, maintenance, or ownership of that ATV. That would make sense for farmers to say, well, because we have this broad and vigorous language in there and something could potentially come within that, well, therefore, there's no duty to defend. I don't believe that's appropriate. I don't believe that meets the expectations of the insured in this matter, and I believe that this court should therefore reverse the trial court's stand. What are the facts that Lynch Hoskins did with regard to his stepson? He failed to supervise his stepson. His stepson was out driving his ATV on a quarter-mile track while Mr. Hoskins was separated by some distance, I believe somewhere between a quarter-mile and a half-mile. He was in the parking lot while his stepson is driving his ATV around a flat, circular track. And according to the allegations of the underlying complaint, Mr. Hoskins failed to properly supervise and train, in fact, I believe he's properly supervised his stepson in his stepson's operation. So this is homeowner's insurance? This is homeowner's insurance. What part of homeowner's insurance renders this, what is the theory on how Mr. Hoskins is covered? Because the policy says we will pay those items that the insurer becomes legally obligated to pay. And I believe that if you're looking at the allegations of the complaint, clearly those fall within those allegations. You have been sued in negligence, all right? As Mr. Graham pointed out, the policy does provide defense coverage for activities that occur on an insured location. Clearly, I believe he accurately pointed out we have an insured location. We have activities on an insured location by an insured. You take all of these factors together in determining whether or not there is or is not defense coverage. And I believe clearly that there is. So whether there would be indemnification would wait to be resolved? Correct. That issue is not properly before this court because you need to have a finding of liability against Mr. Hoskins before the duty to indemnify by farmers even becomes an issue. Thank you. Thank you, Counsel. Mr. Worker. May it please the Court, Counsel. My name is Dan Worker. I represent Illinois Farmers. I'd like to start at the very beginning with Counsel's last argument on the difference between the duty to defend and the duty to indemnify. As the Court knows, if the issue being determined in the coverage case is not an issue that's being decided in the underlying case, the Court is free to take a look at the allegations of the complaint, the policy at issue, and make a determination whether or not there is a duty to defend. And that's what the Court did in this case. The Court properly reviewed the policy language, the exclusionary language, and found not only did the motor vehicle exclusion apply, but the residency exclusion applied as well. That Court's finding in no way requires any further determination in the underlying case before we can get a determination of the coverage issue. In Illinois, the Courts are consistent. They would like the coverage issue resolved quickly if at all possible. Those cases where it cannot be resolved are where issues in the underlying case are being decided, which is not the case here. Mr. Moore's fundamental point is correct, though, isn't it? It's a lot easier. The State is a lot easier deciding that coverage exists for purposes of providing a defense than indemnity? The duty to defend is broader than the duty to indemnify. I would agree with that statement. In this case, the word exclusionary clause clearly applies to the facts that are applied in the case. Counsel, I'm new to this insurance stuff. I've been 21 years now in this Court. It's like English is my mother tongue. When I read these policies, I don't know what the hell you're saying. How do they write stuff like this? And when you say, well, it's clear, it's not the least bit clear to me. I don't know what you're talking about. Well, the policy language is developed over time for cases such as this. Motor vehicle exclusion in this case is clear that homeowners' policies are not intended to cover the use of motor vehicles. There's exceptions. Now, that would be something I could understand. Why did they just stop there? What is all this stuff about an insured location? What's that all about? Because homeowners have, for example, rotting lawnmowers at their homes. And they want coverage for liability. So why don't they say, except for rotting lawnmowers? That would work. Because the extent and the efficacy of the different things that people use on their resident premises evolves over time. And to include a laundry list would be an onerous task. As opposed to come up with this language that's incomprehensible as opposed to a laundry list. See, if it were a laundry list, then we wouldn't have any disputes. Well, there's no dispute in this case that the ATV being used in this case is a motor vehicle. The question is whether or not it falls within an exception of the definition in our policy. And in order to do that, it would have to be a motor vehicle that's not registered for use on public ways that is operated only on an insured location. An insured location, according to counsel's argument, is one that is occasionally rented. And in this case, they argue that no freight ATV park, a public access park, is an insured location. What do you mean a public access park? Well, the public is free to use the park as long as they purchase a license for the vehicle that they're going to operate in the park. Is it open to me? It is. And there's other activities that go on in the park rather than this ATV operation. Do you have to get a license to use the park? No. I mean, you can use the boating facilities, you can rent boats in the park, and there's other recreational activities, picnic areas, as attested to in Shiley's affidavit. So what is at issue here is the use of this ATV in this public park. And in order to use the park, and some of the facts that counsel ignored in his brief completely and didn't even mention in the argument today, are relevant to that issue. The vehicle being used by Schmidt, the stepson in this case, was actually owned by another party, Bayer. And Bayer purchased the license to use that vehicle in the park. And that's important because the insured Haskins had nothing to do with the purchasing of that license for the use of that vehicle in that park. Insurance policies are only ambiguous if they're subject to a reasonable interpretation. I think the trial court got it right when they looked at the standard in this case, is what does the plaintiff need to do? Counsel spends a lot of time criticizing the trial court in the sense that they said, what was the party's intent in this contract? And intent is an important analysis of coverage interpretation. Before you get too far away from the exclusion, I wanted to ask you, is it stipulated too that this ATV was not subject to motor vehicle registration? It was not disputed in the underlying action. It was acknowledged by the defendants in the case. And also contrary to the arguments raised in the reply brief, it's not disputed that the vehicle was owned by Breyer, that it was not owned by Haskins, that Haskins bought an annual pass for other ATVs and vehicles that are used in the park. Was there evidence as to what that license or permit allowed? Did they have to have that license to get into the park? Yes. It had to be attached to the vehicle that was being used in the park. It's no different than if I buy a license or registration for my motor vehicle. By buying the license that allows me to operate my vehicle in the township that I'm in doesn't mean that I'm renting the vehicle. Ownership or rental of the vehicle is much different from a license for use in a particular area. And I believe that a common-sense, reasonable interpretation of the policy language at issue is exactly that. And the court had it right, and the court recognized the difference between a license and registration. An insured location, something that's owned or rented on an occasional basis by the insurer, and a license to use property in a public setting for certain vehicles that are being used. What's your best case on that issue? That this permit did not constitute a rental. Your Honor, there is no specific case on what constitutes a rental. But if you look at the case law on insured location at resident premises, it's pretty clear that the intent of the policy is to insure a location, a residence, something that the insurer has an ownership or rental interest. So a rental home? A rental home they choose occasionally. If I was going to go up to Wisconsin and rent a cabin and use it for a short period of time, that would be considered something that if I was using my ATV or my running lawn mower, I would be covered for. What if I were at my in-law's cabin, didn't pay rent, but used it regularly, and was injured on an ATV? Then I don't believe it would be covered because the insurable interest is the property that you're insuring, and the use of that vehicle on that property. It's a risk that the insurance company... Would it be covered if it were in a trust with my husband's name on it? Then you're getting into state law in terms of what ownership interest is, and if the legal definition gave the insurer that owned the vehicle that was being used on that property an interest in that property, then yes, it would be covered in that circumstance. What if I took my kids to the country club I belong to? That's an example that we use when we argue the case in the underlying case. A membership to a country club is your right to use the country club. You're not actually renting the facility. You can rent the facility maybe for a wedding or a retirement party. In that circumstance, you would have a separate agreement that would give you the use or the right to use that property for a limited period of time. If you have an ownership interest in the country club and you store, for example, a golf cart there, and you're using the golf cart in your membership, it may be included within that definition. I think that's a much closer call than what we have here where you have no ownership interest in the property whatsoever. You have a license to use a particular vehicle, and again... These cases seem... I mean, I found cases that weren't cited by the parties. Some places, they find a ticket to use the Ferris wheel is enough. In other cases, they say paying your golf fee is enough. Where do we draw the line? I believe the logic... Motor vehicle exclusion is not the only exclusion that the court relied on in finding no coverage in this case. They also relied on the residency exclusion, which we think is equally as applicable. So is the purpose of the residency exclusion to exclude insureds from coverage? Residents of the household from coverage. The whole point, if you look at the history of the residency exclusion, the purpose behind it is to avoid fraud or collusion between insureds who reside together or residents of the household. They don't want to pay fraudulent claims in terms of injuries claimed as a result of some negligence between insureds. And that has been upheld in our state for as long as I've been doing this, which is over 23 years. So my homeowner's is really not to insure... It's not to insure injury between family members. If I injure one of my family members, my homeowner's policy is not intended to cover me for that. And the residency issue is important in this case because Haskins himself, in getting dismissed from the original lawsuit, used that to his benefit. He signed an affidavit. He attested that over 10 years he provided room, boards, board, maintenance, and consistency in residency for this kid. And the mother, Kim Haskins, signed a similar affidavit attesting to the same thing. Although the residency wasn't permanent and they were not the custodial parents, the child was still active and a participant in her lifestyle. And the case is very similar to the Hutchcraft case that was discussed here already, which recognizes that non-custodial parents provide a residence for their minor children. Permanency of a vote is really not an issue in those cases because the courts recognize that the child stays frequently with the non-custodial parents. But it wasn't the purpose of that case to provide coverage. Right, but the only difference between coverage is grants and exclusionary language is the burden of proof. In cases where it's being argued that the person wants to be a resident for the purposes of granting coverage, it is on the insurer to prove that they're a resident of the household. It's their burden. With regard to exclusionary language like we have here, the burden shifts to the insurance company to prove that the person is either a resident or not a resident, whatever the case may be. So don't you think it would have been relevant for the trial court to hear things like, did he get mail there, did he have a computer there, did he have his own bedroom, did he eat breakfast there? I think the facts that were presented to the court were sufficient to make a ruling on the exclusionary language. I think that Congress clearly met the burden of proof on that issue. The affidavit signed by Hoskins, the insurer in the case that was used for a dismissal and an underlying action, attested to those things. And they were undisputed in the underlying case. So, carrying the weight of sufficiency, and more probably true than not true for the purposes of a motion to dismiss, the court in the underlying case felt that those facts were sufficient to allow him to escape liability in that case. So, carrying that same standard over in the facts that were attested to, I think are enough in this case to meet that burden of proof on the residency issue. As I mentioned, with regard to the motor vehicle exclusion, there is not an alternative interpretation of that language that is reasonable. A plain reading of what counsel is saying is that you can have a license that's purchased by a third party that allows use of property, and as long as the insurer doesn't have a license, the insurer is riding on that vehicle, that property that he's riding on, because of an insured location. If we follow counsel's argument to as large as restraining, there is no ownership interest, there is no rental interest in the vehicle that the insured was using at the time of the incident. That ownership interest, if any, would belong to the third party that owned the ATV. So, if there's any claim, it should be made under his owner's policy. So, their argument that our policy language is ambiguous as it applies to this license fee or this lease or rental of the pass that allows them to get into the park, really is not even applicable in this case at all, because they didn't purchase the right to use the vehicle because it wasn't their vehicle. And the trial court correctly recognized that, I believe it's on appendix 14, page 14 of the court's opinion, where it did consider that issue. So, I think if you take the fact that the vehicle itself was not being used at the time, or, I'm sorry, that it was being used at the time, was not even owned by Haskins, and Haskins didn't purchase the pass to get into that park on that vehicle, there is no logical extension. To make the exclusion applicable for that motor vehicle. So, that motor vehicle that was being used at the time of the accident cannot fall within the exception of the exclusionary language, even by counsel's creative stretching of the plain language of the policy. So, based on those arguments, we believe that the trial court was correct. They did not err. They applied the appropriate standard in this case, which is whether or not there's sufficient proof to show that the exclusionary language was applicable to avoid any defense obligation. But isn't the allegation that Haskins was negligent in his supervision of his stepson? Yes, he was. And all the cases that follow Allstate v. Pruitt, which is the first case that recognizes supervision claims are not covered, although to a but-for causation analysis. But for the injury to the child on that motor vehicle, the injury wouldn't be present. What if it were failure of supervision, or negligent supervision, watching his stepson perform circus tricks in the house? It would be different. It wouldn't fall within that exclusion. So negligent supervision can be a cause of action covered by the homeowner's policy? It wouldn't apply if it was a resident, because then the residency exclusion would apply. So a friend of his kid comes over and is going to perform circus stunts in the house? Well, I mean, Allstate v. Pruitt was that case. I mean, there was a negligent supervision claim for a drowning in a swimming pool, and the negligent father didn't watch the child in that case. And the residency exclusion applied in that case. The analysis is a but-for analysis, but for the use of the motor vehicle, the injury couldn't take place. I think Northbrook, Oakley, Perez. Perez is a modification to a vehicle. They modified the student buggy, and they allowed the child to use it. And the allegation in that complaint was negligent modification or product liability theory. And the court said that the exclusion applied to that theory as well. So as long as the injury is related to the use of the vehicle, there's no question that the injury in this case is related to the use of that ATV. So the applicability of the exclusion is clear, I believe, in this case. I believe even under the critical arguments that were raised with regard to a potential ambiguity on an exception to a definition in this case, wouldn't be applicable under the facts and circumstances of this case. And therefore, this court should uphold the trial court's ruling and find that Illinois Farmers does not have a duty to defend the counterclaim that was filed in this case. Thank you. Your Honor, I just have two points. First, I just want to pick up on one point that the court has indicated. If farmers really wanted to draft a policy that was clear, they could have. This wasn't that policy. You're sure? I don't think I've ever seen one that was all that clear. If they wanted to include a long list of things that were included and did not include, they certainly could have. Why do you suppose they don't? You think it wouldn't be that tricky? I'd have to agree with you. Here, standing before you, counsel could rattle off a number of different ways in which the policy could be interpreted and where there would be coverage and other circumstances where there wouldn't. And in short, it's not going to know which is which unless it's put down on paper. In this case, it hasn't happened. The only other point that I wish to say is that although counsel indicated that the lower court did actually decide the residency question, I think if you take a closer look at the order, you'll see that the court did not actually decide the question. It indicated an inclination but did not decide the issue. If you have any other questions.